The next case this morning is 23-1349, Atlantic Richfield v. NL Industries, counsel for appellant. If you'd make your appearance and proceed please. Thank you Mr. Chief Judge and may it please the court. I'm Teresa Benz for Atlantic This CERCLA case concerns Atlantic Richfield's cleanup of a mining site where both it and NL's predecessors had operations, and whether Atlantic Richfield will be foreclosed from pursuing NL's share of the cleanup costs by a statute of limitations that expired before Atlantic Richfield's contribution claim even occurred. NL agrees that once Atlantic Richfield settled with EPA, it no longer had a claim for cost recovery and could only pursue contribution. The question here is what statute of limitations applies to that contribution claim? Is it section 113 G3 for contribution, the claim that Atlantic Richfield has, or is it section 113 G2 for cost recovery, the claim it doesn't? Put that way, the answer seems clear. It should be contribution. But the dilemma here is that the section 122A settlement that Atlantic Richfield entered is not one of the listed triggering events for the contribution statute of limitations. But post Cooper Industries and Atlantic Research, every circuit to consider this question has held that the contribution statute of limitations applies in the circumstance. If ARCO had incurred the expenses after the unilateral administrative order and prior to the settlement, wouldn't the action actually have been a cost recovery action as opposed to a contribution action? Only until Atlantic Richfield settled, because once it settled, it moved into the procedural posture of only having a contribution claim. That's what Cooper Industries said. No, the costs had not been incurred in connection with the settlement. In other words, if the costs had been incurred only as, you know, obviously the complaint was originally a cost recovery complaint, if the costs are incurred then, and then there is, let's say, years later, then there's a settlement, well, the costs weren't incurred by virtue of the settlement. The settlement is obviously after the fact. Can the settlement sort of retroactively and magically transform the character of those expenses from cost recovery to contribution? It can. As long as that settlement resolves liability to the United States, which this settlement did for past response costs, which the settlement also did, it qualifies for under the plain language of CERCLA, Section 113F3B. So we know that we're in contribution land with respect to all the matters addressed in the settlement, and that included those past work costs, because Atlantic Richfield settled its liability to the United States and said, we're responsible for those costs. We're responsible for the future cleanup. They're on the hook with stipulated penalties and financial assurance. EPA got certainty that this cleanup was going to be completed. Both parties covenanted not to sue each other over this cleanup, and that includes matters related to those past costs. So they were encompassed within the settlement, and it moves the whole case into contribution. Had Atlantic Richfield not settled the past costs and just settled its reimbursement to EPA, it would still have a cost recovery claim for those costs. Let me just ask one follow-up question. You mentioned F3B. Is a contribution action under F3B, are F3B and F1, are those independent sources of a contribution action, or must an action under F3B, in order to constitute a contribution action, also have to satisfy F1? They're independent. I think the Supreme Court has made clear in both Cooper Industries and Atlantic Research that there's two avenues to contribution. You can settle or you can be sued. Either one gets you to contribution. And once you're in contribution, you can't also seek cost recovery. And one of the reasons, particularly when you've settled your liability and you're within the F3B-type contribution claim, is that Atlantic Richfield now enjoys protection from the contribution claims of other potentially responsible parties, PRPs. They can't sue Atlantic Richfield in contribution anymore for the matters addressed in the settlement. So if Atlantic Richfield could still pursue a cost recovery claim, it could settle its liability with the government, pursue any of its costs that's incurred in cost recovery, and the party it sues, NL in this case, wouldn't be able to bring that contribution claim. So that's the tradeoff, is that by settling this liability, we lost that cost recovery claim. And that is a more expansive claim. It allows you to recover any costs incurred. Whereas now we're in contribution, we can only seek equitable, NL's equitable share of those costs, not any of the costs incurred in joint and several liability. Turning to Sunco and why it doesn't require this court to rule in NL's favor, there's two reasons. It's both factually distinguishable and no longer good law. And they're sort of overlapping. Because if Sunco were decided today, this court would look at Sunco as a PRP, potentially responsible party, who does not have a contribution claim. Because Sunco had neither been sued nor settled, so it didn't fall within either Section 113F1 or F3B's contribution claims. So it makes sense that this court couldn't find a corresponding statute of limitations trigger for a party that had neither been sued nor settled. Here, however, Atlantic Richfield has settled its liability within the meaning of Section 113F3B. I don't think that's disputed. And therefore, we have this contribution claim. And the question is, did Congress create this right to contribution and not give a corresponding statute of limitations just because the type of settlement we entered under Section 122A isn't specifically listed? You do concede, don't you, that you don't have a contribution action under F1? That's correct. It's under F3B for the settlement, the administrative settlement we entered with the United States. So either this court has to conclude that there's no statute of limitations, or it has to borrow one. And there's different places to look to borrow. You could look to state law that that could create a patchwork of opinions across the states. And instead, the court is directed to look at the most suitable statute of limitations. It is the most suitable one, the one for contribution or for cost recovery. And if you look at G3, the one for contribution, it talks about the triggering events or a judgment or three types of settlement. They're just like the 122A settlement, because they define when a party's claim for contribution comes into existence, when they become responsible for more than their fair share of the costs, and that's when contribution kicks in. So the thrust of the triggers in 113G3 are just like the settlement agreement that Atlantic Richfield entered. And unlike anything happening in cost recovery, where you're looking to recover any of the costs that you incurred in that type of lawsuit, and so you're looking at the beginning of a remedial action or the end of a removal action for marking the time that that claim occurs. What if the settlement were, let's say I have a Bob Baccarat cleanup action in 2024, and I incurred $20 million, and then I've incurred that, and let's say, and that's a cost recovery action. And then, let's say 20 years later, I enter into a settlement with the EPA, and the EPA says, okay, well, you were released from liability. You have no third-party liability if sued by another PRP. You know, can I then, 20 years later, institute a contribution action even though none of my costs were incurred in connection with that settlement? It was obviously after the fact. Would I still have a 3B contribution action? And if so, could I still, as long as I, you know, satisfy the statute of limitations, as ARCO arguably did here, could I then recoup my costs against another PRP? Yes, so long as you resolve your liability to the United States for those response costs. It really doesn't matter whether the settlement had anything to do with your actual incurring of the costs, or when it did, or how many decades later it is. It seems a little bit crazy, doesn't it? It's not crazy at all. It's not that the settlement forced you to start undergoing those costs, because CERCLA exists to get to that prompt cleanup, so it's not about let's figure out who did what, let's get them on the hook, get them to settle, and then the cleanup can begin. It's not supposed to work that way. The government can go out and order a party, any PRP, to start cleaning up under an order, and that's what's happened here, and then start to negotiate what is this cleanup going to look like, and what are we going to agree. But they had already done it. They had already done some of it, but Atlanta Richville committed to finishing that cleanup, so now the government. But the rule would be the same, even if they had already finished it. If they say, okay, well, you paid $400,000, okay, you've already finished the cleanup, now you can go after NL. As a practical matter, EPA wouldn't settle a removal action that had already finished, because they wouldn't have nothing to settle. The action would be finished. So as a practical matter, for their own costs to be reimbursed, because that's a different type of settlement, or for costs that the party had. Okay, but if EPA, let's say they had a bad man running EPA, if they did enter a settlement, the rule would be the same, right? That in this situation, the equivalent of ARCO could seek contribution against another PRP, even if ARCO had already completed the cleanup. So long as those cleanup costs were part of the matters addressed in the settlement, and I imagine there'd have to be some consideration or some reason that EPA would a removal action after it's done. But as long as it's within the settlement, and it's a resolution of liability to the United States in an administrative or judicially approved settlement, it triggers contribution under CERCLA statute. And it's intended to be that way because, again, CERCLA's not concerned about figuring out everybody who's responsible. They're concerned with getting the cleanup done, getting it paid for by private parties, and then giving a private party who has incurred more than its fair share, which is what happened when Atlantic Richfield entered into this settlement, to allow them to seek contribution and cost sharing from other potentially responsible parties. And unless the court has further questions, I'll save the remainder of my time for rebuttal. Thank you. Mr. Chief Justice, may it please the court. Joel Herz on behalf of NL Industries, Inc. There's a primary question that this court is going to have to answer in this appeal, and that question is this, is did the United States Supreme Court in either Cooper v. Avial, United States v. Atlantic Richfield, or Guam v. the United States, indisputably and pellucidly abrogate Sun Company v. Browning Ferris, Inc.? The answer to that question is no. The answer to that question is no for the following reason, which is what this court did in Sun Country is said if there has not been a 113G3 triggering event, 113G3, they're calling it the contribution statute of limitations, it has four specific triggering events, none of which have admittedly been met. One is a judgment. That hasn't happened. One is a what? I didn't hear what you said. One is a judgment, and that hasn't happened. Two is a court-approved consent decree, which there was live litigation between NL and ARCO and the United States at the time the settlement was entered into. They did not go to the district judge to have a consent decree approved. That consent decree would have required publication in the federal record, it would have required comment, and it would have required EPA to consider those comments, and ultimately, for that settlement to be approved, there would have needed to be a fairness hearing where NL would have had to have participated, had the right to participate and object and state its position. What you said earlier, Judge Backrock, was it sounds crazy. Well, it is crazy. What's crazy here is, and I think the facts matter here, and I want to take the through some of them. It is undisputed that there's no allegation that NL's alleged successor had anything to do with the site since 1944. I'm sorry to interrupt you. Please don't forget your train of thought, but I wanted to ask you about what you had just said about Sunco and how it wasn't indisputably abrogated by Cooper Industries or Atlanta Richfield. Didn't, in Sunco, didn't the court predicate the applicability of G-2 on the premise that a contribution action, broadly defined, is simply a subset of a cost recovery action, and therefore, the court was going to apply the limitations period for a cost recovery action, G-2, when a contribution action didn't otherwise fall into one of the predicates in G-3. We know that's no longer even arguable. It's indisputable, implicit, because of what Atlantic Richfield said if Cooper Industries hadn't already done it, and that is that cost recovery and contribution action are completely independent. They're mutually exclusive, to use the words of Atlantic Richfield. So, and that's an excellent question, and thank you for asking that. When you read, let me take Sun Company first, and then I will turn to Atlantic Richfield. When you read Sun Company, there's two pieces of analysis. One is the statutory text, where it reads the statute 113 G-3, and the four triggering events that I had started to go through. It then reads the statutory language of 113 G-2, and what it says, and it talks about the recovery of the costs that were incurred pursuant to 107. There is no argument here, by the other side, that the $64 million that they spent under this unilateral order was incurred pursuant to 107, that was their whole original complaint. Well, that's, yeah, and so they acknowledge that they don't have a contribution action under F-1, it's under F-3B, and so why does it matter under F-3B? So, why does it matter what the- In other words, the contribution action under F-1 would only be if it was incurred during or after a civil action under 106 or 107. They acknowledge that they're not invoking that, but they do fall under F-3B. They do follow, they don't fall under F-3B, there's no question about that. What the court, what the Tenth Circuit looked at in some country is, okay, if you do not have a triggering event under 103, 113 G-3, what statute limitations will apply? And what this court said is, if we don't have that triggering event, the statute limitations, the most suitable one is 113 G-2, there's a reason why Congress left out a 122-A settlement, which is what they've had. It's not there. We don't think it's an accident because they're very specific on the other types of settlements. A 122-D settlement, which is the de minimis settlement, a 122-H settlement, which is bringing back the government its costs, the judgment that we talked about, the judgment we talked about earlier, and then the court-approved consent decree. They're very specific. And so the lot, what some country then goes and does, well, wait a second. These costs have been spent under 107-A. This is to, and it's in our brief, is to get back those costs. Whether it's a contribution action or whether it's a cost recovery action doesn't answer the question of whether it's 113 G-2 or 113 G-3 and the most suitable one there, the court determined, was 113 G-2 and the same should be here. Now, let me take you to the second part of analysis because I think this is the most important part. And I don't want to insult you, but I think I slightly disagree with your analysis of what was said. I've been insulted by far worse things. You won't insult me. I'm wrong a lot. Thank you for that bit of humor. Let's talk more specifically about Atlantic Richfield. What did Atlantic Richfield address and what did Atlantic Richfield do? The sole question in Atlantic Richfield was somebody who has not been sued by the government and hasn't been the focus of a 106 order, do they have a 107-A claim? That was the sole decision of that case. It did not address the statute of limitations. It did not consider the statute of limitations. And more importantly, and this is the part where you and I slightly part ways, it reaches out and albeit in a footnote, and I know that footnotes are not typically holdings, it reaches out and specifically says... Wait a minute. You said you know that footnotes are not holdings? Typically a footnote will not be a holding, yes. I don't think there's any black letter rule about that. And I'm not suggesting that there is. But it isn't a footnote. And what they say in Atlantic Richfield is we are not suggesting that there is no overlap between a 113 claim and a 107 claim. And so the question that comes is where is that overlap? What is that overlap? What was the Supreme Court speaking about in Atlantic Richfield? And the answer is it's right here in this case, which is they spent the $64 million under 107-A. That's undisputed. It's in their complaints. It was the whole basis of their original lawsuit for the first two years until we moved to the motion for summary judgment, which was fully briefed and ready to go. And then they do this magical switch paying EPA $400, $400,000, reminding when the government was a defendant in the case at the time, the government got protection so that our suit against them for contribution had to be dismissed. And this is that overlap. And so the concept that Atlantic Richfield has abrogated, certainly not indisputably and collusively, Sun Company because it determined that contribution and cost recovery are distinct remedies, doesn't mean that it said that the statute of limitations should be 113-G3 instead of 113-A. But the same money can't be, do you agree with this? The same dollar can't be characterized as both cost recovery and contribution. There might be overlap, but a dollar spent for a cleanup is either cost recovery or it's contribution. Is that wrong? I think that's not correct because up until March, they filed this lawsuit in January of 2020. We filed the motion for summary judgment. They filed their amended complaint in, and I might be getting this date wrong, in May of 2022, two years later. Up until the date they filed that amended complaint, they were calling that $64,000 cost recovery. Suddenly when they made the settlement, that same exact money that had already been spent, they now just started to call it something different. And so if we take ARCO's own words, yes, they can both be classified in the same way. Well, I was just kind of curious if the $64 million was cost recovery under your theory and the additional money that they hadn't yet spent in the cleanup when they filed the amended complaint might arguably be considered a contribution action under F3B and trigger G3 for the, let's say it's additional million dollars to be spent in the future under the settlement. So I was wondering if the same cleanup can have X part be considered a recovery, cost of recovery under 107, and part the remainder be a contribution action under F3B. And again, I think that's an excellent question, and I think the answer to that should be no. And I will tell you why, and I will be forthright. There is no Tenth Circuit case that says that, okay? But there is a Ninth Circuit case, and it's cited in our briefing. It's ASARCO versus Celanese, 2015, where exactly what ARCO tried to do here is exactly what ASARCO tried to do there, which is ASARCO's statute of limitations had expired, and there was a lot of money involved, like there's a lot of money here. ARCO went ahead and then did a settlement with the government and said, our claim is now revived. The Ninth Circuit said, no, you can't do that. Once your claim is expired, you can't revive it by a settlement. And I think that answers your question as to- Was it extinguished before the settlement here? Absolutely. There's no, that's, I believe, undisputed, which is there's no question here that if 122 G2 applies, that, and the facts which I was starting to go through earlier are important, which is the unilateral administrative order is entered on March, is issued on March of 2011, either under three years or six years, whether it's a removal action or whether it's remedial action, the six years pass from the date of that order. There's a couple other important pieces here, and that is coming back to the facts. And I don't think this court should get lost out on this, which is in 1996, after they had written us a letter telling us they were going to sue us, they had litigation involving the site with a company called Crystal Oil. That was in the District of Louisiana. They told that district court in May 31st, 1996, that they had pending claims against NL for this very site. They said they were going to make those claims and wanted to move the case to the District of Colorado. Ultimately, the case was moved to the District of Colorado. 1996 went by, 97, 98, EPA came in in 2000 after ARCO abandoned the site, did an emergency removal action to clean this up. They didn't sue us then. They then waited, not merely till the 2011 period, but until 2020. It's more than 25 years after they told us they were going to sue us. It's 25 years after they told us that the district court said they had pending claims. When you look, and this is an Exhibit A to our response brief, when you look at the congressional stated purpose of the statute of limitations, and the statute of limitations was added in 1986 after CERCLA was originally enacted in 1980, the Congress said the purpose of the statute of limitations is to bring the parties to the tables quickly. And I want to get you the exact language. This amendment provides for the timely filing of cost recovery actions to assure that evidence concerning liability and response cost is fresh, and to provide a measure of finality to the responsible parties. That was the stated congressional purpose. In the intervening 80 years since my client was involved, the 40 years since ARCO started the cleanup, the nine years since the AOC, people have died, documents have been lost. The exact purpose of the statute of limitations is why I believe the court approved our motion for summary judgment, and it's for those same reasons the court should be affirmed. And unless there are questions, I thank all judges for their time and listening to me. Thank you. Thank you for the argument, counsel. Thank you. Thank you. I'm going to start where Anna left off about these past events and what people knew. Congress didn't make what PRPs knew or past events relevant to the statute of limitations. When it comes to cost recovery, you're looking at when did the removal action end, and this was a removal action which hasn't ended, so that statute of limitations is still going. When did the remedial action start? Because remedial actions require a lot of planning, so there's more knowledge. Removal action is still continuing? It is, and much more than a million dollars has accrued since the 64 million. Rather than falling it under a remediation action? EPA has called it a removal action, it's been run out of the office for removal actions, it was set up as a removal action, and it continues to be a removal action. I'm just confused factually about a very fundamental question. Remediation can include the act of further removal, I assume. When does the title change from removal to remediation? It depends on a number of factors is my understanding, but there's administrative lead up to that, there's feasibility studies, there's a record on decision. None of those things have occurred here. The cleanup continues as a removal. Have you seen the quinones of a remediation? Is there any magic test for when everything is involved, everything involves getting the bad stuff out completely, and you either, so is there, do the parties have to, when is that magic moment that it moves from removal to remediation? Is it simply when you have a remediation agreement, is that, is it a legal question, or is it a factual question? I think it's a mixed question, and that was not a question that the district court decided here, and the important thing for this case is that we do have a contribution claim, and the matters addressed in the settlement include these past work costs, and Judge Bacharach asked about fairness. One of the things that Atlantic Richmond gave up by the settlement is its cost recovery claim for the 63 million, 64 million, and counting against NL. It can't pursue any amounts incurred. It can only pursue NL's equitable share. That's what contribution does, and that's a significant concession, and so that allows the cleanup to continue, and for EPA to have certainty about what's going to happen here, and I just want to address the Sarko case very quickly. It's Sarko versus Selanese. That was a bankruptcy case, so actually the contribution statute had accrued with certainty, and that statute of limitations had been missed, and I see that my time is up. We'd ask that the court reverse. That case did not, there is no Supreme Court case that has addressed the statute of, specifically the statute of limitations issue, is that right? For a claim that's not specifically listed in G3, that is an administrative settlement that creates contribution, no, there's no Supreme Court case that has addressed that, but the Sixth Circuit and Third Circuit have addressed it and found that contribution should apply. Unless the court has further questions. No, counsel. Thank you.